We have three cases scheduled for oral argument today. Let's start with the first one. This is field number 14-7090, Vetter v. McDonald. Mr. Smith, you reserve five minutes for rebuttal. Okay, thank you. Please begin when you're ready. May it please the court. I have two initial points I'd like to make regarding the interpretations of the VA regulations at issue in this case. First, with regard to Section 4.16, contrary to the text of the regulation itself and the precedent from this court, the Veterans Court interpreted the regulation as precluding a TDIU finding as being reasonably raised by a record that contains evidence of unemployability if a veteran is later determined to have been able to obtain employment. Second, with regard to Section 4.63, the Veterans Court incorrectly interpreted the regulation as requiring the equivalent of complete paralysis or ankylosis in order to reasonably raise a claim for loss of use and or foot. Mr. Vetter believes that both interpretations of these regulations were incorrect and asked this court to reverse the decision of the Veterans Court and remand this case to that court with instructions to remand to the board to perform the proper. Can you show us where the Veterans Court did a treatment in terms of interpreting the terms of either 4.16 or 4.63? Sure. So with regard to 4.16, I think the evidence that the court was interpreting the regulation is in part shown by the fact that it cited 4.18 in its interpretation at A, it's a record page A6. After considering the TDIU issue, it cites 4.18 which related to unemployability and in so doing shows that it wasn't merely applying 4.16 in resolving Mr. Vetter's claim but was actually incorporating a limitation. But it's also citing 4.16 too. He said 4.16 as well but there would be no reason for the Veterans Court to have cited 4.18 if it wasn't for some reason incorporating a limitation from that regulation in its interpretation of 4.16. Well, let me see if I understand. You started off I think by saying that the wrongful interpretation had to do with, if I heard you correctly, the failure of the court to recognize what was required to trigger the inquiry into the 4.16. Is that right? Did I hear you correctly? As opposed to the question of what the substantive requirements of 4.16 are. Right. Which is the argument you're making about the misinterpretation of 4.16? A substantive argument or in effect a procedural argument, failure to recognize that there was evidence that should have provoked the board's inquiry into a 4.16. I think the question presented here because the VA and the board never actually reviewed 4.16 and its determination is whether or not it was reasonably raised by the record. But that's not really an interpretation question of the regulation, right? That's a question of whether there was an error on the part of the board not to have looked at the record and concluded that it was reasonably raised by the record. Right? Right. But in determining that it wasn't reasonably raised, the court was looking at 4.16 and interpreted 4.16 as not encompassing a situation where a veteran is later enabled to secure employment. And in finding that his later employment prevented him from even reasonably raising the possibility of entitlement to TDIU under 4.16, which requires a veteran to be unable to obtain substantially gainful employment. The Veterans Court was actually interpreting 4.16 as not applying in the situation because Mr. Vetter later... You think that the Veterans Court was interpreting 4.16 not to require that or to require that substantial gainful employment was not required according to the Veterans Court? Is that your view of what they were saying? That's my understanding of what the Veterans Court... That's the interpretation that I believe the Veterans Court made in this case. But where does it say that? I think... You're asking us essentially to infer an interpretation from the way that the Veterans Court applied the facts, aren't you? No, I don't think there's any... Then where in the opinion does it say 4.16 doesn't apply when a veteran gains employment? I acknowledge that the opinion itself nowhere says it explicitly in those terms. But I think there is no requirement under the jurisdictional statute that it be made explicit that an interpretation is... Well, sure, but I mean, you have to show us where it actually even implicitly suggests that. I think it implicitly suggests that the court is interpreting the regulation that narrowly, as I pointed out before, in the fact that it cites 4.18. Indeed, the Secretary did a brief also in characterizing the Veterans Court opinion said that... But it also cites 4.16. It cites both 4.16 and 4.18. Well, the passage that struck me as most indicative of what the court seemed to think 4.16 required was the passage on A5, the second full paragraph, and where the court is saying there is no record evidence. This is where it's dealing with the question of whether there was record evidence to support a TDIU determination. There's no record evidence that he was let go of that position as of July 12, 2012. That was his new position. Or that, and here's the critical language, the position was not one of substantially gainful employment, followed by Senate saying he did not suggest below that he was unemployable or unable to obtain substantially gainful employment. Sounds like they are indeed interpreting 4.16 as requiring substantial gainful employment. Doesn't that, isn't that a fair, indeed the fairest reading of that language? The issue, the issue is, I agree that that's what the language says. The issue is that the reason the record doesn't contain evidence of substantially gainful employment or Mr. Vedder's, or lack of substantially gainful employment is because the VA and the board never performed this analysis to begin with. And so the issue is under, But it's not the analysis that shows that it's the record evidence. Right. But under, You're not making a failure to develop or assist argument here. You're saying that they didn't look at the record properly, right? So the record is what it is. But under 4.16B, a full statement as to the veteran's service-connected disabilities and employment history is required to be performed by the board when a TDIU claim is reasonably raised. But when it's reasonably raised, the Veterans Court here found, as a matter of fact, that it wasn't reasonably raised by this record. But in doing so, it did so, and the reason, the only basis provided by the Veterans Court in reaching that conclusion is that Mr. Vedder was later able to obtain employment. Well, that's not entirely accurate. Is it on page A6, it elaborates and notes that he had several jobs as his claims for benefit was processed and then had this job for seven months as it was decided. So I think the court also understands that he lost those jobs partly due to his disability, but it looks at the record as a whole and finds that as a whole, it doesn't demonstrate unemployability. I don't see where it's applying an incorrect legal standard there. I mean, I think your argument is that they've applied the incorrect legal standard by once a veteran gets a substantial job, then there can never be TDIU. And if that's what this was saying, you might have an argument, but I don't see where the Veterans Court is saying that. So the two things you pointed to on page A6, you know, the fact that he had several jobs and that he was actually employed, the problem is that under this court's precedent in both Comer and Roberson, this court interpreting the same regulation said that all a veteran has to do is present evidence of unemployability. Roberson's a little bit different, isn't it, though? Because Roberson is based on the part of the statute where the veteran has met the scheduler, the 60 or the 80 percent, I think, and chose unemployability. That's different than 4.16B, isn't it? I don't think there's a distinction made in the statute or in Roberson regarding the fact that it was applied. It's essentially what you're arguing for is that anytime whatsoever, no matter what the schedules provide, whether it's a 10 percent or an 80 percent, if there's any evidence that the veteran found a job, the board has to state on the record that 4.16B has been considered and doesn't apply. I think the question, it's not whether or not the veteran has obtained a job. I think what the point is, is that if the veteran has presented evidence of unemployability, in this instance, evidence that he had been terminated for his job and that he was unemployed for a period of a year and a half during the time frame, that under those circumstances, the VA should consider the TDIU statute, 4.16A or B. Let me return to make sure that I understand your position on the jurisdictional issue, whether we have jurisdiction or not. Suppose that the Veterans Court had said explicitly, we interpret Section 4.16, according to its terms, to require a showing that he was unable to obtain substantially gainful employment, the exact language from the regulation point, period. Then went on to say, we've looked at this record and we conclude on this record, in light of the fact that he had a job ultimately, which seemed to be, there was no indication that it wasn't substantial employment. It was a maintenance supervisor or something like that, I think. In light of that evidence, we think that that standard is satisfied. Would we have jurisdiction in that case, given that they read 4.16 to require exactly what, as I understand it, you're saying that substantively is required to be interpreted to say? I think under those circumstances, I think it would present a factual question. This court, that would be a part of jurisdiction. But I don't think that's exactly the same as what we have here, because here we have the court also citing 4.18 and saying that under, in light of 4.18, as well as 4.16. In the Veterans Court's initial opinion, it didn't cite 4.16 at all. And that's at a... Sure, but you pointed out that error and the Veterans Court looked at it and said under 4.16, also, the record doesn't raise unemployability. It seems to me that you're suggesting that because they're citing 4.18, in addition to 4.16, that there's somehow error. I think my position is that by citing 4.18 and finding that the later employment was a bar to Mr. Vedder's reasonably raising the issue of TDIU, the Veterans Court was at least implicitly interpreting 4.16 to preclude the TDIU being reasonably raised. Mr. Smith, you're into your rebuttal. Do you want to say something about your 4.63 claim now, or do you want to reserve your time? Just briefly, I'll note that 4.63 wasn't interpreted in this case as well. The court found that it requires at least the equivalent of complete paralysis or ankylosis to reasonably raise an issue of loss of use, and we believe that it is unnecessarily limiting of the regulation. It's not required. Those two subsections of the regulation are not the requirements of the general subsection, which requires a determination based on the actual remaining function. We'll hear from the government. Mr. Freeland? Good morning, and may it please the Court. The Court should dismiss this appeal for lack of jurisdiction. Whether the record reasonably raises the TDIU claim in any given case is a factual question, or most involve the application of law to fact. The Veterans Court here didn't merge sections 4.16 and 4.18. It simply cited both of those sections. The Veterans Court didn't hold that any employment is the same as non-law. Why did the Veterans Court cite 4.18? Well, 4.18 also... What is this trying to suggest to the reader by invoking 4.18? Well, 4.18 also talks about unemployability and when a veteran may be considered as unemployable. So I think the Veterans Court was simply citing both 4.16 and 4.18 to cover all of its all phases, since obviously the issue here was whether or not Mr. Vetter is in fact unemployable. But it certainly referenced 4.16 and also referenced the specific language in 4.16 regarding substantial gainful occupation. Do you think the term unemployable in 4.18 incorporates the requirement that the employment be substantially gainful? Right, I think it does. I mean, it doesn't say so, I guess, explicitly, does it? In 4.18 it doesn't, but certainly in 4.16, that's what... But you interpret those terms as being impairing material. Right, certainly for a TDIU claim, the issue is one of substantially gainful employment. But I think you're also saying that even for 4.18 claims, which are a specific, narrow category of claims, that would nonetheless also require substantially gainful employment. Right, that's right. That's right, Your Honor. All right, is there any hint anywhere in Veterans Court, or for that matter, Board precedent as to what constitutes substantially gainful? It has to be something other than marginal, Your Honor. And I don't recall the regulation offhand, but I believe there's a regulation that talks about marginal employment as well. Right. So it has to be something other than marginal. And here, of course, the Veterans Court made the determination that the record simply didn't indicate, and Mr. Vetter didn't assert, that the job that he held was anything other than substantially gainful. Moreover, Your Honor, even if... Your Honors, even if the court considers the merits of this claim, any error here... All right. Mr. Prehammer, are you suggesting that the veteran has to state on the record that although he may be employed, his job isn't substantially gainful? Well, certainly if the issue is presented to the Veterans Court and the Veterans Court doesn't make any sort of assertion otherwise, then it seems reasonable for the Veterans Court to conclude that, in fact, the employment is substantially gainful. And the Veterans Court, of course, looked at the record here as well and expressly stated that there simply is no indication in the record that the employment here was other than substantially gainful. Moreover, even if the court considers the merits, any error here in not considering TDIU was harmless error. The board, in fact, considered whether the disability here caused marked interference with employment under Section 3.321B1. The test for TDIU under Section 4.16 is actually a higher standard. So if Mr. Vedder wasn't able to meet that lower standard before the board, he certainly wouldn't have been able to demonstrate TDIU. Turning to Mr. Vedder's... Briefly to Mr. Vedder's claim under Section 4.63. I assume, if I can interrupt you, I assume that the test of employability has to do with the particular skill set and experience of the particular veteran. In other words, you couldn't say somebody who has been a carpenter all his life and is deprived of the capacity to continue to do carpentry could nonetheless write novels for a living, and that would be a substantially gainful employment. Right, although I wouldn't necessarily say that just because one couldn't do carpentry, there may not be other jobs that the veteran could do. I think the veteran... Right, but you wouldn't say you could go to law school and become a lawyer if you don't even have any skills. I think that would be unreasonable, Your Honor. That's right. Regarding the claim under 4.63, this court also lacks jurisdiction to entertain that It didn't limit what constitutes loss of use of hand to only the specific examples cited in the regulation, so this court should also dismiss that claim as well. So unless the court has further questions for these reasons, we respect the request that the court dismiss this appeal. Well, why did the opinion invoke complete ankylosis and complete paralysis? I'm sorry, why did it? Yeah, why did it? Well, doesn't that suggest that in the veterans court's mind, that is what's needed in order to satisfy the requirements of this regulation? No, Your Honor. In fact, the veterans court specifically said that those are just examples provided in the regulation, and obviously noted those examples, but it didn't limit its analysis to only... It didn't say the only way you can show loss of use of the hand is if you can meet one of those two examples. It never said that in its opinion, Your Honor. And in fact, it actually cited earlier at page three of the joint appendix, the more general language in the regulation concerning whether or not the effective function of the hand would be equally well served by an amputation stump with the use of a suitable prosthetic device, and that's the portion of the regulation that Mr. Vedder focuses on. Well, the veterans court cited that very language in its opinion. So for these reasons, we respect the request of the court to dismiss its appeal. Okay, thank you. Thank you. Mr. Smith, we'll give you four minutes. Thank you. If you need it. I just have a couple of quick points. First is the jurisdictional issue under 4.16. For all the reasons mentioned before, I believe this court does have jurisdiction, and indeed, in the Roberson case, the court was deciding a similar issue. And the Federal Circuit determined it did have jurisdiction to hear the case in that instance, and so I think this case presents a similar question regarding 4.16 and when it's reasonably raised, and thus this court also has jurisdiction. But there you're going back to the reasonably raised question as being the jurisdictional point as opposed to the substantive question of what does 4.16 mean with respect to what the elements of proof are required. So I'm not clear which of those you're saying is the jurisdictional hook for this court. I think the jurisdictional hook is the interpretation of the regulation. The interpretation of the regulation as saying it doesn't require substantial gainful employment as you read it. That's right. So the Roberson issue really isn't the jurisdictional hook issue then? Right. Second, briefly, the Secretary notes the harmless error of the decision of this case, and I think it was explained in our briefs. I think there clearly is harmful error in this case if the court determines that it does have jurisdiction because Mr. Vetter under 4.16 is entitled to certain, under 4.16, full statement as to his service-connected disabilities, employment history, et cetera, that was not performed by the VA. And so whether or not the VA considered 3.321 or some other statute that may have similar or different things, it is not the analysis he was entitled to under this regulation. And indeed, the case cited in our brief shows that they aren't the same analysis. They're not overlapping. They're really different analyses. So I think the harmless error issue should be disregarded. And then finally, with regard to 4.63, the Veterans Court did note that the two subsections, it characterized them as examples of what was required to meet the 4.63 statute. And I think that is, in fact, indicative of the fact that it is interpreting the language of the regulation above that as requiring something along the lines of those two subsections. But there's nothing in the regulation itself that says those are meant to be examples or criteria or set a threshold or be anything related to what is actually required to meet the text of the body of the regulation, which requires a determination made on the basis of the actual remaining function, particularly in the use of a hand, whether acts of grasping, manipulation, et cetera, is present or deficient to the point that raises the issue. And if you require complete paralysis or complete ankylosis as a prerequisite for getting to even reasonably raise this, then you're not going to be able to determine the actual remaining function because you're going to have required a complete paralysis. You're not going to be able to, that analysis isn't going to be, you'll never get to that analysis. Wouldn't you read 4.63 A and B, which refer to the ankylosis and complete paralysis, as being examples of what constitutes a loss of a hand or a foot? The way I read the regulation, I don't read them as examples. I read the text of the regulation above as being the standard that you require for 4.63. And A and B are merely two ways that automatically qualify for 4.63 consideration, qualify under the statute. They aren't necessarily examples or meant to limit the text above them. I view them just as two circumstances that automatically meet the standard, not necessarily limiting the standard of the text above them. Okay. I think my time is up unless there's any further questions. Mr. Smith, thank you. Thank you. Case is submitted.